**LENSCRAFTERS, INC.**

v.

**Don SUNDQUIST, in his official capacity as Governor of the State of Tennessee, et al.**

Supreme Court of Tennessee, at Nashville.

Dec. 13, 2000.

---

Barbara J. Moss, Nashville, TN, for the movant, LensCrafters, Inc.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Michelle Hohnke Joss, Assistant Attorney General, for the respondent, Don Sundquist, in his official capacity as Governor of the State of Tennessee, et al.

## OPINION

BIRCH, J., delivered the opinion of the court, in which ANDERSON, C.J., DROWOTA, HOLDER, and BARKER, JJ., joined.

This case is before the Court on a certified question from the United States District Court for the Middle District of Tennessee.[1] The moving party, LensCrafters,

---

1. Tenn.Sup.Ct.R. 23 provides:

   The Supreme Court may, at its discretion, answer questions certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling pre-

Inc., (LensCrafters) owns optical stores throughout the United States and produces prescription ophthalmic materials on its premises. LensCrafters leases space to licensed optometrists who perform eye examinations. Prescription lenses and frames are then made and fitted, all in furtherance of the concept of "one-stop shopping." LensCrafters sued in the district court to challenge the constitutionality of Tenn.Code Ann. § 63–8–113(c)(6) (1997). This statute defines as unlawful and thus prohibits optometrists from:

> [practicing] or [offering] to practice optometry in, or in conjunction with, any *retail store or other commercial establishment* where merchandise is displayed or offered for sale.

(Emphasis added.) The question certified to us by the district court is whether an entity engaged primarily in the business of selling eyeglasses and frames is a retail store or other commercial establishment as defined by the above-quoted statute. We accept the certified question and answer that such entities are "retail stores or other commercial establishments" as statutorily defined.

## I. Facts and Procedural History

LensCrafters is an Ohio corporation which owns numerous optical superstores throughout the United States. LensCrafters sells prescription ophthalmic lenses and frames on its premises and employs dispensing opticians [2] to produce these materials. In addition, LensCrafters leases space at its stores to licensed Tennessee optometrists [3] so that customers may obtain eye examinations and have prescription eyeglasses made at the same location.

In April 1997, the Tennessee Board of Optometry (Board) sanctioned Jeffery A. Rothman, O.D., an optometrist who leased space from LensCrafters. The Board found that Rothman had violated Tenn. Code Ann. § 63–8–113(c)(6) (1997), which prohibits optometrists from practicing "in, or in conjunction with, any retail store or other commercial establishment where merchandise is displayed or offered for sale." The Board, in addition to imposing a $1,000 fine, ordered Rothman to close his practice within thirty days unless he were to accomplish the following: (1) install closable, lockable doors separating his leased space from LensCrafters; (2) provide a separate entrance from the outdoors

---

cedent in the decisions of the Supreme Court of Tennessee.

**2.** Under the Tennessee statutes governing opticians, the term "dispensing opticians" is used in two separate contexts that may seem confusing at first glance. The statute (and this opinion) refers to "dispensing opticians" and also to businesses "in the practice of dispensing opticians." A "dispensing optician" is an optician who engages in the "preparation, adaptation and dispensing of lenses, spectacles, eye glasses and optical devices to the intended user thereof on the written prescription of a physician or optometrist." Tenn.Code Ann. § 63–14–102 (1997 Repl.). Like other opticians, dispensing opticians may not "examine or exercise eyes," nor may they "diagnose, treat, correct, relieve, operate, or prescribe for any human ailment." *Id.* § 63–14–102(2). However, dispensing opticians are allowed to fit contact lenses "in the presence of and under the direct supervision of a licensed optometrist or ophthalmologist." *Id.*

In turn, the "preparation, adaptation and dispensing of lenses, spectacles, eye glasses,

and optical devices" is referred to as the "practice of dispensing opticians." *See, e.g., id.* § 63–14–103(d). Thus, when we refer to businesses "in the practice of dispensing opticians," we are referring to businesses that perform the services provided by dispensing opticians.

**3.** Optometrists are allowed to conduct eye examinations "for the purpose of ascertaining defects of vision or muscular anomalies or other abnormal conditions of the eyes," and they are also allowed to prescribe "ophthalmic lenses or prisms to remedy or relieve defects of vision or muscular anomalies." Tenn.Code Ann. § 63–8–102(12)(A)(B) (1997 Repl.). Optometrists may also supply, replace, or duplicate an ophthalmic lens or frame. *Id.* § 63–8–102(12)(D). However, unlike ophthalmologists, optometrists are not licensed physicians. Instead, optometrists in Tennessee, as in other states, are separately licensed and regulated by a Board of Optometry. *See Id.* § 63–8–112.

to his space; and (3) provide a waiting-room area near the separate entrance. Rothman petitioned for chancery court review pursuant to Tenn.Code Ann. § 4–5–322 (1997).

While review was pending, LensCrafters brought suit in the United States District Court for the Middle District of Tennessee against Don Sundquist, in his official capacity as Governor of the State of Tennessee, and the members of the Tennessee Board of Optometry, in their official capacities. In that suit, LensCrafters challenged the constitutionality of Tenn.Code Ann. § 63–8–113(c)(6), contending that the statute violates the Dormant Commerce Clause, the Equal Protection Clause, and the Due Process Clause of the United States Constitution because it allows businesses owned by Tennessee-licensed optometrists to sell optical products and conduct eye examinations in the same location but does not allow out-of-state-owned retail establishments to do so. Upon the defendants' motion for summary judgment, however, the parties agreed that if Tenn. Code Ann. § 63–8–113(c)(6) were interpreted to exclude entities engaged primarily in the business of selling and dispensing ophthalmic lenses and frames from the definition of "retail store or other commercial establishment," then it would be unnecessary to reach the constitutional issues that LensCrafters had raised. To resolve this issue, the district court certified the following question for our determination:

> Whether an entity engaged primarily in the business of selling and dispensing ophthalmic lenses and frames is a "retail store or other commercial establishment" within the meaning of Tenn.Code Ann. § 63–8–113(c)(6)?

We accepted this question for review and now respond that such an entity is a retail store under the statute.

## II. Analysis

█ The parties in this case contend that this Court should interpret Tenn.Code Ann. § 63–8–113(c)(6) to exclude businesses which sell ophthalmic lenses and frames because a contrary interpretation would render the statute unconstitutional.[4] They contend that the restriction against practicing in or in conjunction with a retail store discriminates against out-of-state stores, thereby unduly burdening interstate commerce.[5] We begin by discussing the constitutional aspects of the parties' construction of the statute.

█ The states are allowed great leeway under their police power to adopt regulations that protect the health and safety of their citizens. Although the Constitution confers "upon Congress the regulation of commerce, ... [it was] never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country." *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 443, 80 S.Ct. 813, 816, 4 L.Ed.2d 852 (1960), *quoted in Head v. New Mexico Bd. of Exam. in Optometry*, 374 U.S. 424, 428, 83 S.Ct. 1759, 1762, 10 L.Ed.2d 983 (1963). Although regulations adopted under the police power may indirectly impose a burden on interstate commerce, they are not unconstitutional unless they are shown to "discriminate against interstate commerce or operate to disrupt its required uniformity." *Huron Portland Cement Co.*, 362 U.S. at 448, 80 S.Ct. at 818.

The statutory regulations on optometry[6] pertinent here in effect insulate optome-

4. In reviewing a statute for a possible constitutional infirmity, we are "required to indulge every presumption and resolve every doubt in favor of the constitutionality of the statute." *Petition of Burson*, 909 S.W.2d 768, 775 (Tenn.1995).

5. *See generally* U.S. Const. art. I, § 8, cl. 3.

6. The laws providing for the establishment of the Tennessee Board of Optometry and the standards governing optometrists are found in Tenn.Code Ann. §§ 63–8–101 through 63–8–133 (1997 & Supp.1999). The statutes provide for the examination and licensing of optometrists, prohibit the unauthorized practice of optome-

trists from non-health care commercial entities. The purpose of this insulation is to prohibit the formulation of business relationships between optometrists and such entities. The policy supporting such prohibitions is that preservation of an unbroken relationship between the professional and the patient is best achieved by shielding the professional from the risk of control by an unlicensed person or entity. *See Cole Vision v. Dept. of Bus. and Prof.,* 688 So.2d 404, 409 (Fla.Dist.Ct.App.1997).

A review of analogous precedent shows that regulations prohibiting optometrists from practicing optometry as a servant of an unlicensed optical business, though affecting interstate commerce, have been held to be constitutional. *See Pearle Optical of Monroeville, Inc. v. Georgia State Bd. of Examr's in Optometry,* 219 Ga. 364, 133 S.E.2d 374 (1963); *Sears, Roebuck & Co. v. State Bd. of Optometry,* 213 Miss. 710, 57 So.2d 726 (1952); *see also* 61 Am. Jur.2d *Physicians, Surgeons, etc.* § 157 (1981); 88 ALR 2d 1290, 1294 § 3[a]. In upholding the constitutionality of a statute prohibiting those "engaged in the business of retailing merchandise" from renting out space for eye examinations, the United States Supreme Court stated:

> It seems to us that this regulation ... is an attempt to free the profession, to as great an extent as possible, from all taints of commercialism. It certainly might be easy for an optometrist with space in a retail store to be merely a front for the retail establishment. In any case, the opportunity for that nexus may be too great for safety, if the eye doctor is allowed inside the retail store. Moreover, it may be deemed important

to effective regulation that the eye doctor be restricted to geographical locations that reduce the temptations of commercialism. Geographical location may be an important consideration in a legislative program which aims to raise the treatment of the human eye to a strictly professional level. We cannot say that the regulation has no rational relation to that objective and therefore is beyond constitutional bounds.

*Williamson v. Lee Optical of Okla., Inc.,* 348 U.S. 483, 491, 75 S.Ct. 461, 466, 99 L.Ed. 563 (1955). Our Court has stated similar concerns justifying such regulations when addressing the question of optometrists being employed by corporations:

> The logical result would be that corporations and business partnerships might practice law, medicine, dentistry or any other profession by the simple expedient of employing licensed agents. And if this were permitted professional standards would be practically destroyed, and professions requiring special training would be commercialized, to the public detriment. The ethics of any profession is based upon personal or individual responsibility. One who practices a profession is responsible directly to his patient or his client. Hence he cannot properly act in the practice of his vocation as an agent of a corporation or business partnership whose interests in the very nature of the case are commercial in character.

*State ex rel. Loser v. National Optical Stores Co.,* 189 Tenn. 433, 225 S.W.2d 263, 269 (1949).[7]

of optometry, and place restrictions on those licensed to practice. These restrictions include prohibitions against engaging in the practice of optometry as an "employee of any person, or business or organization not engaged primarily in health care delivery," dividing fees or agreeing to "split or divide the fees received for professional services with any person for bringing or referring a patient," and the prohibition in this case, practicing "in, or in conjunction with, any retail

store or other commercial establishment where merchandise is displayed or offered for sale." Tenn.Code Ann. §§ 63–8–113(c)(2), (5), & (6); 63–8–120(a)(13) & (14) (1997 Repl.).

7. Notably, *Loser* was decided in 1949, prior to the enactment of Tenn.Code Ann. § 48–248–101 *et seq.,* which allows the creation of Professional Limited Liability Companies (PLLC), and the enactment of Tenn.Code Ann. § 48–101–601 *et seq.,* which allows the creation of

We conclude that even were the statute to prohibit the practice of optometry in LensCrafters's stores, it would still be constitutional. Therefore, our construction of the statute is not affected by constitutional concerns. Rather, we are aided by a consideration of the intent of the legislature in its enactment. Indeed, to ascertain and give effect to the intention and purpose of the legislature is the basic rule of statutory construction. *Worrall v. Kroger Co.*, 545 S.W.2d 736 (Tenn.1977). This "[l]egislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language." *Carson Creek Vacation Resorts, Inc. v. State Dept. of Revenue*, 865 S.W.2d 1, 2 (Tenn.1993). In determining legislative intent, statutes relating to the same subject or sharing a common purpose must be construed together ("*in pari materia*") "in order to advance their common purpose or intent." *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn.1997). Ultimately, we must seek the most "reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." *Id.; see also Cronin v. Howe*, 906 S.W.2d 910, 912 (Tenn.1995).

■ Here, the natural and ordinary meaning of the language used, "any retail store ... where merchandise is ... offered for sale," would include ophthalmic superstores such as LensCrafters. The parties maintain, despite the absence of language exempting ophthalmic stores, that the intent of our legislature in enacting the provision before us was to prevent optometrists from practicing in department stores and not stores which specialize in selling ophthalmic supplies.

To support their assertion that applying Tenn.Code Ann. § 63–8–113 to ophthalmic stores would be inconsistent with the statutory scheme considered as a whole, the parties point to sections of our Code which suggest an "overlap" between the work of dispensing opticians and optometrists. The parties note that LensCrafters is a business "in the practice of dispensing opticians" under Tenn.Code Ann. § 63–14–102 and thus is allowed to prepare, adapt, and dispense lenses, spectacles, eye glasses, frames, and optical devices. They further note that opticians are permitted to practice as employees of businesses "in the practice of dispensing opticians" if they are "under the actual and personal supervision of partners, officers, managers or stockholders who possess valid unrevoked licenses as dispensing opticians entitled to practice in [Tennessee]." *See* Tenn.Code Ann. § 63–14–103(d) (1997). Thus, LensCrafters may sell ophthalmic lenses and frames and may employ opticians who dispense ophthalmic lenses and frames.

Likewise, the parties note that optometrists are permitted to employ dispensing opticians. *Id.* § 63–14–105 ("Nothing contained in this chapter shall be construed to prohibit a ... licensed optometrist from employing a licensed dispensing optician as defined in this chapter."). Moreover, they note that selling glasses has long been a part of the practice of optometry and that the statutory scheme contemplates that optometrists should be allowed to sell ophthalmic lenses and frames. *See id.* § 63–8–102(12)(D). Thus, like businesses "in the practice of dispensing opticians," optometrists also may hire opticians to sell and dispense ophthalmic lenses and frames.

Professional Corporations (PC). These statutes have been widely used by professionals, including optometrists, to allow them to practice as business associations. However, the PLLC and PC statutes have no impact on our decision. The *Loser* Court's concern was with the unlicensed practice of learned professions by business associations, a concern which does not apply if the business association is under the exclusive control of licensed professionals. *Cf. Loser*, 225 S.W.2d at 269. Thus, we do not mean to imply that licensed optometrists should be prohibited from forming PLLCs or PCs under which to conduct their practice.

The basic thrust of the parties' argument is that the statutes governing opticians and optometrists are inconsistent because they allow a business "in the practice of dispensing opticians" to hire dispensing opticians and sell ophthalmic products, and they allow an optometrist to hire dispensing opticians and sell ophthalmic products, but they do not allow a business "in the practice of dispensing opticians" to form a business association with an optometrist. The parties contend that the similarities between optometrists and businesses "in the practice of dispensing opticians" render unjustifiable any argument that relationships between such businesses and optometrists would degrade the profession of optometry.

The parties fail, however, to recognize that allowing optometrists to practice in conjunction with businesses "in the practice of dispensing opticians" may involve a compromise of the optometrists' professional autonomy. Such does not occur when an optometrist operates an independent business which employs opticians to dispense and sell ophthalmic lenses and frames. Cf. Tenn.Code Ann. § 63–8–113(c)(2), (5) (1997 Repl.). Furthermore, there is no statute condoning an optometrist's professional association with or employment by dispensing opticians. See id. § 63–8–113. The reason for this is that opticians are not health care professionals; they are specifically prohibited from examining eyes or diagnosing, treating, or correcting "any human ailment ... or physical condition." Id. § 63–14–102(2). Consequently, although optometrists permissibly may employ dispensing opticians, to allow optometrists to form business associations with dispensing opticians-or

with businesses "in the practice of dispensing opticians," such as LensCrafters—would be equivalent to allowing optometrists to form business associations with non-health care provider commercial entities.[8] By allowing such business associations, we would risk subordinating the standards of the optometry profession to the influence of commercial interests operated by lay business persons rather than by health care professionals.

In holding that businesses which sell ophthalmic lenses and frames are retail establishments within the meaning of Tenn.Code Ann. § 63–8–113(c)(6), we must also address whether this interpretation renders the optometry statute internally inconsistent. Although this argument was not raised by the parties, one might assert that optometrists are allowed to sell lenses and frames within their own practice, Tenn.Code Ann. § 63–8–102(12), and yet by doing so, they violate the prohibition against practicing in a "retail store ... where merchandise is ... offered for sale."[9] However, we decline to hold that this inconsistency requires that the phrase "retail store or other commercial establishment" be interpreted to exclude stores engaged primarily in the business of selling and dispensing ophthalmic lenses and frames. A more reasonable interpretation is that the phrase "retail and commercial establishments" refers to "non-health care profession" commercial entities. We reach this conclusion in large part by reference to Tenn.Code Ann. § 63–8–113(c)(2), which implicitly allows an optometrist to be employed by persons and entities "engaged primarily in health care delivery." This construction of the statute prevents the "lay control of optometrists,"[10] advances

---

8. We find that the production and sales of ophthalmic lenses and frames does not constitute the delivery of health care.

9. Another point raised in our discussions concerned the possibility that if an optometrist has prescriptions filled by an independently owned dispensing optician, then the optometrist would be working "in conjunction with" a commercial establishment in violation of

the statute. However, because "in conjunction with" is defined to mean being joined together in an association, see Black's Law Dictionary 765 (6th ed.1990), such business practices would not violate the statute.

10. See California Ass'n of Disp. Opticians v. Pearle Vision, 143 Cal.App.3d 419, 191 Cal. Rptr. 762, 769 (1983).

the goal of encouraging a direct line of responsibility from licensed optometrists to their patients, and further allows optometrists to practice in professional associations with other licensed health care professionals who are not only in the practice of health care delivery, but who also sell ophthalmic products.

### III.  Conclusion

Accordingly, we answer the question certified to us by the United States District Court for the Middle District of Tennessee as follows:

An entity engaged primarily in the business of selling and dispensing ophthalmic lenses and frames is a "retail store or other commercial establishment" within the meaning of Tenn.Code Ann. § 63–8–113(c)(6).

The clerk will transmit this opinion in accordance with Rule 23, Section 8 of the Rules of the Supreme Court.

The costs in this Court are taxed equally between the parties.