*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0174p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LENSCRAFTERS, INC.; U.S. VISION; COLE VISION
CORPORATION; NATIONAL ASSOCIATION OF
OPTOMETRISTS AND OPTICIANS,

        *Plaintiffs-Appellants,*

    *v.*

KENNETH S. ROBINSON, in his official capacity as
Commissioner of the Tennessee Department of
Health; JERRY A. RICHT, O.D.; SCOTT L. SPIVEY,
O.D.; TERRY L. HENDRICKSON, O.D.; BRIAN
BROWDER; JEFF FOSTER, O.D.; EDDIE ABERNATHY,
O.D.,

        *Defendants-Appellees.*

No. 03-5512

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
Nos. 98-00150; 00-00096—Aleta A. Trauger, District Judge.

Argued: November 2, 2004

Decided and Filed: April 14, 2005

Before: MARTIN and BATCHELDER, Circuit Judges; JORDAN, Senior District Judge.[*]

---

## COUNSEL

**ARGUED:** Barry Friedman, NEW YORK UNIVERSITY LAW SCHOOL, New York, New York, for Appellants. Eugene N. Bulso, Jr., BOULT, CUMMINGS, CONNERS & BERRY, Nashville, Tennessee, for Appellees. **ON BRIEF:** Barry Friedman, NEW YORK UNIVERSITY LAW SCHOOL, New York, New York, Julie A. Maloney, Stacey L. Jarrell, THORP, REED & ARMSTRONG, Pittsburgh, Pennsylvania, Daniel H. Bromberg, JONES DAY, Washington, D.C., Alan N. Greenspan, JACKSON WALKER, L.L.P., Dallas, Texas, for Appellants. Eugene N. Bulso, Jr., Melissa R. Ballengee, Barbara Hawley Smith, BOULT, CUMMINGS, CONNERS & BERRY, Nashville, Tennessee, for Appellees. Roger A. Fairfax, Alissa Starzak, O'MELVENY & MYERS, Washington, D.C., for Amicus Curiae.

---

[*]The Honorable R. Leon Jordan, Senior United States District Judge for the Eastern District of Tennessee, sitting by designation.

————————————

**OPINION**

————————————

BOYCE F. MARTIN, JR., Circuit Judge.  Lenscrafters, along with several other interstate optical companies and their national trade association, appeal the district court's summary judgment upholding the constitutionality of a Tennessee state statute, Tenn. Code Ann. § 63-8-113(c)(6), which, as interpreted by the Tennessee Supreme Court, essentially prohibits optical companies from leasing space to optometrists to perform eye exams in their retail eyewear stores.  On appeal, Lenscrafters claims that the provision violates the Commerce, Equal Protection, and Due Process Clauses of the United States Constitution.  For the following reasons, we AFFIRM the summary judgment of the district court.

I.

On April 17, 1967, Tennessee Code Annotated Section 63-8-113(c)(6) was signed into law.  This provision, the constitutionality of which is at issue in this case, provides that it is unlawful for any licensed optometrist to "[p]ractice or offer to practice optometry in, or in conjunction with, any retail store or other commercial establishment where merchandise is displayed or offered for sale."  At the time that the law was passed, proponents argued that the prohibition was necessary to "upgrade the profession" and to protect the doctor-patient relationship from interference by commercial interests.  Kenneth Robinson, in his capacity as Commissioner of the Tennessee Department of Health and henceforth referred to as the State, claims that the law was enacted to prevent the harm that may occur if optometrists are subjected to the control of optical retail stores.

The plaintiffs in this case, collectively referred to as "Lenscrafters," argue that the statute was passed as a protectionist measure, aimed at preventing large out-of-state retail stores from competing with local optometrists in the retail eyewear market.  To support its claim, they point to Tennessee Optometric Association documents that seemingly refer to a "top secret" campaign to rid Tennessee of commercialism in discount optometric stores.  Lenscrafters also claims that the legislative history of the law suggests that the provision had discriminatory purposes since at least some members of the Tennessee legislature criticized the bill at the time of its passage as lacking any public purpose.

Lenscrafters generally prefers to provide "one-stop shopping," whereby it leases space in its retail eyewear superstores to optometrists who perform eye exams.  Section 63-8-113(c)(6), as interpreted by the Tennessee Supreme Court, essentially outlaws this practice. *See Lenscrafters, Inc. v. Sundquist*, 33 S.W.3d 772 (Tenn. 2000) (holding that Section 63-8-113(c)(6) applies to businesses, such as Lenscrafters, that primarily sell ophthalmic materials).  Consequently, Lenscrafters claims that Section 63-8-113(c)(6) violates the Commerce, Equal Protection, and Due Process Clauses of the United States Constitution because it allows in-state optometrists to provide "one-stop shopping" while prohibiting optical companies from doing the same.

II.

Lenscrafters filed the original action challenging Section 63-8-113(c)(6) on February 19, 1998, in the District Court for the Middle District of Tennessee.  On August 3, 1999, the district court certified a question to the Tennessee Supreme Court, seeking an interpretation of whether an entity engaged primarily in the business of selling lenses and frames is a "retail store or other commercial establishment" under Section 63-8-113(c)(6).  The Tennessee Supreme Court, in an opinion entered on December 13, 2000, held that such establishments did fall within Section 63-8-113(c)(6)'s prohibition. *See Sundquist*, 33 S.W.3d at 778.  In its opinion, the court noted that the statute applies only to "non-health care profession commercial entities," suggesting that optometrists

are allowed to sell lenses and frames within their own practice. *Id.* (internal quotation marks omitted).

On January 15, 2003, the district court denied Lenscrafters's motion for summary judgment and granted the State's motion for summary judgment, holding that Section 63-8-113(c)(6) does not violate the Commerce Clause, the Equal Protection Clause, or the Due Process Clause. The court rejected Lenscrafters's Equal Protection and Due Process challenges, finding that the statute was rationally related to a legitimate state interest, particularly in light of the United States Supreme Court's rejection of similar challenges in *Williamson v. Lee Optical*, 348 U.S. 483 (1955). The court also upheld the statute on the dormant Commerce Clause claim, holding that the statute was not discriminatory and did not impose a burden on interstate commerce "clearly excessive to the putative benefits" of the statute. On January 31, Lenscrafters filed a motion to alter or amend the judgment under Federal Rule 59, requesting that the district court reconsider its finding that some of their exhibits were inadmissible hearsay. On February 24, the district court revised its evidentiary rulings on four exhibits, but refused to alter or amend its judgment. Lenscrafters timely appealed the district court's decision on March 25.

### III.

This Court reviews de novo a district court's grant of summary judgment. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A court considering a summary judgment motion considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Lenscrafters claims on appeal that the district court erred in holding that Section 63-8-113(c)(6) does not violate the dormant Commerce Clause, the Equal Protection Clause, or the Due Process Clause. We will address each claim in turn.

### IV.

We first consider whether the district court erred in rejecting Lenscrafters's claim that Section 63-8-113(c)(6) is violative of the Commerce Clause. In short, Lenscrafters claims that the challenged provision impermissibly discriminates against interstate commerce by giving Tennessee optometrists a competitive advantage over their out-of-state competitors in the retail eyewear market.

"Although the Commerce Clause is by its text an affirmative grant of power to Congress, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 82 (1984). This limitation—known as the "negative" or "dormant" Commerce Clause—prevents states from advancing their own economic interests by frustrating the movement of articles of commerce into or out of the state. In analyzing the constitutionality of a statute under the dormant Commerce Clause, this Court engages in a two-step inquiry. First, we determine "whether the statute directly burdens interstate commerce or discriminates against out-of-state interests." *E. Ky. Res. v. Fiscal Court of Magoffin County, Ky.*, 127 F.3d 532, 540 (6th Cir. 1997). If the statute is found to be discriminatory, it is virtually *per se* invalid and the Court applies the "strictest scrutiny." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of the State of Or.*, 511 U.S. 93, 101 (1994). If, on the other hand, the statute is not discriminatory, we proceed to the second step to determine whether "the burdens on interstate commerce are 'clearly excessive in relation to the putative local benefits.'" *E. Ky. Res.*, 127 F.3d at 540 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S.

137, 142 (1970)). If the burdens are "clearly excessive," then the statute violates the Commerce Clause.

A.

The threshold question is whether Section 63-8-113(c)(6) is discriminatory. This Court has noted that a "statute can discriminate against out-of-state interests in three different ways: (a) facially, (b) purposefully, or (c) in practical effect." *E. Ky. Res.*, 127 F.3d at 540 (citing *Wyoming v. Oklahoma*, 502 U.S. 437, 454-55 (1992)). The statute at issue here is not discriminatory on its face, so the only issues are whether the statute either purposefully, or in practical effect, discriminates against out-of-state interests.

*Discriminatory Purpose*

The burden of establishing that a challenged statute has a discriminatory purpose under the Commerce Clause falls on the party challenging the provision. *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979). As this Court has noted, "[w]hen a party seeks to present circumstantial evidence of a discriminatory purpose pursuant to a dormant Commerce Clause challenge, it is the duty of that party to show the effect of that evidence on the challenged statute." *E. Ky. Res.*, 127 F.3d at 542-43. Lenscrafters claims on appeal that the district court erred in concluding that Section 63-8-113(c)(6) did not purposefully discriminate against out-of-state optical stores, pointing to legislative history and documents from the optometrists' trade association that proposed and guided the law through the state legislature. The State, however, argues that the legislative history demonstrates that the provision was intended to apply to both in-state and out-of-state optical retail stores, and that there was no discriminatory animus behind the legislation.

We think that the district court was correct in holding that no rational factfinder could conclude that the challenged provision was purposefully discriminatory. First, Lenscrafters's argument that the legislative history of the statute suggests that its passage was motivated by a discriminatory purpose is unpersuasive. Lenscrafters points to no substantive evidence suggesting that this legislation had a discriminatory purpose. While Lenscrafters does cite several legislators' statements suggesting that the bill lacked a public purpose, the statements do not establish that the purpose of the legislation was to discriminate against out-of-state interests. Rather, the evidence suggests that the purpose of the legislation was to apply the prohibition evenhandedly, to both in-state and out-of-state optical retailers. The proponents of the legislation were seemingly concerned with optometrists who practiced in or in conjunction with any retail establishments, regardless of whether those establishments were owned by in-state or out-of-state interests. This nondiscriminatory purpose comports with the Tennessee Supreme Court's findings in *Sundquist*, where the court noted that to allow optometrists to practice in conjunction with businesses "would risk subordinating the standards of the optometry profession to the influence of commercial interests operated by lay business persons rather than by health care professionals." 33 S.W.3d at 778.

Second, the trade association documents cited by Lenscrafters similarly fail to expose any discriminatory origins of the statute. While some evidence suggests that the legislation was motivated by an organized effort to protect optometry from commercialism, none of the cited documents establishes that the purpose of the legislation was to discriminate against *interstate* retail eyewear companies. Therefore, the district court was correct to hold that Lenscrafters has not presented a genuine question as to whether Section 63-8-113(c)(6) was motivated by a discriminatory purpose.

*Discriminatory Effect*

Lenscrafters also argues that Section 63-8-113(c)(6) violates the dormant Commerce Clause because the practical effect of the provision is discriminatory against out-of-state competitors in the

retail eyewear market. According to Lenscrafters, the statute gives in-state optometrists a competitive advantage in offering "one-stop shopping." The State claims, however, that the law does not treat in-state and out-of-state interests differently because the burden placed on in-state and out-of-state companies is the same.

The district court rejected Lenscrafters's argument on this issue, finding that the argument attempted to compare entities that are not similarly situated—namely, in-state optometrists, considered healthcare providers under state law, and out-of-state optical companies, which are not considered healthcare providers. According to the district court, the similarly situated entities in the present case are optical stores owned by in-state interests and optical stores owned by out-of-state interests. Because the provision does not treat out-of-state and in-state retail stores differently, the court found that the similarly situated requirement was not satisfied and, consequently, there could be no discriminatory effect. On appeal, Lenscrafters claims that optometrists and out-of-state optical companies are similarly situated because they both compete for the same customers in the same market for retail eyewear.

We are convinced that the district court was correct to hold that Lenscrafters has failed to show that Section 63-8-113(c)(6) discriminates against similarly situated entities. As the United States Supreme Court has noted, "any notion of discrimination assumes a comparison of substantially similar entities." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997) (discussing the similarly situated requirement in Commerce Clause cases). Section 63-8-113(c)(6) prohibits all optometrists from leasing space in any optical store, including those owned by in-state interests. Thus, the provision challenged here discriminates against Lenscrafters because it is a retail optical store, not because it is an interstate company. Moreover, the provision does not discriminate among in-state and out-of-state optical stores, as both are prohibited from leasing space to optometrists.

What Lenscrafters actually argues is that Section 63-8-113(c)(6) favors in-state optometrists, who are allowed to sell retail eyewear, at the expense of optical stores that are prohibited from leasing space to optometrists. In our view, dispensing optometrists and optical stores are not similarly situated for Commerce Clause purposes. It is instructive to note the obvious differences between dispensing optometrists and optical retail stores. As the district court properly noted, licensed optometrists and optometric stores such as Lenscrafters are not similarly situated because they provide different services to the market. Unlike retail optical stores, licensed optometrists are healthcare providers and, as such, have unique responsibilities and obligations to their patients that are not shared by optometric stores.

In reaching this conclusion, we agree with the reasoning of the Fifth Circuit in *Ford Motor Co. v. Texas Department of Transportation*, 264 F.3d 493 (5th Cir. 2001), where the court considered the constitutionality of a state law prohibiting automobile manufacturers from acting as automobile dealers in Texas. Ford challenged the statute, claiming in part that it violated the dormant Commerce Clause by protecting in-state automobile dealers from out-of-state automobile manufacturers wishing to market automobiles. The court rejected the claim, finding that the challenged provision

> does not discriminate against independent automobile dealers seeking to operate in Texas. The section only prevents manufacturers, regardless of their domicile, from entering the retail market. Consequently, [the challenged law] does not protect dealers from out-of-state competition, it protects dealers from competition from manufacturers. Out-of-state corporations, which are non-manufacturers, have the same opportunity as in-state corporations to obtain a license and operate a dealership in Texas. Thus, [the law] does not discriminate among in-state and out-of-state manufacturers, nor does it discriminate among in-state and out-of-state dealers by raising the costs of doing business in the local market, stripping away the economic

advantages for an out-of-state participant, or giving advantages to local participants. The absence of such discrimination, either facially or in practical effect, removes [the challenged law] from the Supreme Court's definition of a discriminatory law.

*Ford Motor Co.*, 264 F.3d at 502.

Similarly, the challenged provision in the instant case does not discriminate among optical companies wishing to sell eyewear. Both in-state and out-of-state optical companies are prohibited from leasing space to optometrists. These optical companies, however, are allowed to sell eyewear to consumers; optometrists are simply prohibited from leasing space in optical stores. Lenscrafters argues, however, that the *Ford* rationale is inapplicable here because *Ford* merely applied the rule "that there is no discrimination against interstate commerce if the challenged state law leaves some out-of-state entities free to compete on an equal footing with in-state entities." What Lenscrafters fails to note, however, is that out-of-state optometrists are given the same opportunity to obtain a license to practice optometry and to sell eyewear incident to their practice. *See* Tenn. Code Ann. 63-8-115 (listing application requirements to practice optometry). Thus, just as out-of-state corporations had the opportunity to obtain a license and open a dealership to sell automobiles in *Ford*, out-of-state optometrists have the same ability to obtain a license and sell eyewear incident to their practice in Tennessee.

Moreover, the fact that Section 63-8-113(c)(6) may disproportionately affect interstate optical companies is not determinative. As the United States Supreme Court has noted, "the fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of discrimination against interstate commerce." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 125 (1978). Therefore, we find that the district court was correct in holding that Section 63-8-113(c)(6) does not have a discriminatory effect on interstate commerce.

B.

Because we hold that this provision is not discriminatory in purpose or effect, the question becomes whether "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. 137, 142 (1970). "If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id.* As this Court has noted, "[t]he party challenging the statute bears the burden of proving that the burdens placed on interstate commerce outweigh the benefits that accrue to intrastate commerce." *E. Ky. Res.*, 127 F.3d at 545 (citing *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1282 (2d Cir. 1995)).

Having thoroughly reviewed the facts and arguments presented on this issue, we conclude that Lenscrafters has failed to show a genuine issue of material fact as to whether the burdens placed on interstate commerce are "clearly excessive" in relation to the putative benefits of the statute. In so concluding, we find that the district court's summary judgment for the State on this issue was well-reasoned and correct, with the exception of its inaccurate statement of the *Pike* test. In its opinion, the district court stated "that nondiscriminatory regulations that only incidentally burden commerce are valid 'unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Lenscrafters, Inc. v. Wadley*, 248 F. Supp. 2d 705, 728-29 (M.D. Tenn. 2003) (quoting *Pike*, 397 U.S. at 142). It appears to us that the court simply omitted the word interstate from its statement of the *Pike* test, as the inquiry in this context requires *interstate* commerce to be burdened. *See Pike*, 397 U.S. at 142 ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."). Despite this typographical error, the district court's

application of the *Pike* test was proper.  Therefore, because we agree with the district court's reasoning on this issue, we adopt that reasoning and find it unnecessary to analyze the issue any further.

V.

The final issue is whether the district court was correct in concluding that Section 63-8-113(c)(6) does not violate the Equal Protection or Due Process Clauses.  In our view, the statute at issue here does not target a suspect class, burden a fundamental right, or "shock the conscience," and is therefore subject to rational basis review.  *See, e.g., Romer v. Evans*, 517 U.S. 620, 632 (1996); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993).  Under a rational basis review, a statute is valid if it rationally furthers a legitimate governmental interest. *Id.*  "Under rational basis review, the statute will be accorded a strong presumption of validity, and we must uphold the statute 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Walker v. Bain*, 257 F.3d 660, 668 (6th Cir. 2001) (quoting *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)).

The district court was correct to dismiss Lenscrafters's Equal Protection and Due Process challenges to Section 63-8-113(c)(6).  In *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 490-91 (1955), the Supreme Court upheld a substantially similar Oklahoma law that prohibited a "person, firm, or corporation engaged in the business of retailing merchandise to the general public [from] rent[ing] space, subleas[ing] departments, or otherwise permit[ting] any person purporting to do eye examination or visual care to occupy space in such a retail store."  Finding the provision to be an "attempt to free the profession, to as great an extent as possible, from all taints of commercialism," the Court held that the law had a "rational relation to that objective" and upheld the provision from constitutional attack under the Due Process and Equal Protection Clauses. *Id.* at 491.

Lenscrafters tries to distinguish the instant case from *Lee Optical* by claiming that unlike the law upheld in *Lee Optical*, the challenged provision here was passed for a protectionist purpose and is therefore distinguishable.  In support of their claim, Lenscrafters cites *Metropolitan Life Insurance, Inc. v. Ward*, 470 U.S. 869, 880 (1985), where the Supreme Court struck down an Alabama statute that imposed lower tax rates on domestic insurance companies than on out-of-state companies.  The Court's decision in *Metropolitan Life*, however, does not adequately support Lenscrafters's assertion that Section 63-8-113(c)(6) violates the Equal Protection or Due Process Clauses.  In *Metropolitan Life*, the Court rejected the alleged legitimate government interests in finding that the challenged provision was merely an attempt to promote domestic businesses within the state.  As noted above, we reject Lenscrafters's argument that the challenged provision was passed for a protectionist purpose.   The State has offered a legitimate government objective—protecting healthcare professionals from commercial influences—and Section 63-8-113(c)(6) is rationally related to accomplishing that objective.  Therefore, we affirm the district court's dismissal of Lenscrafters's Equal Protection and Due Process challenges to Section 63-8-113(c)(6).

VI.

For the foregoing reasons, we AFFIRM the summary judgment of the district court.