**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NATIONAL ASSOCIATION OF
OPTOMETRISTS & OPTICIANS
LENSCRAFTERS, INC.; EYE CARE
CENTERS OF AMERICA, INC.,
         *Plaintiffs-Appellees,*

        v.

EDMUND G. BROWN, in his official
capacity as Attorney General of
the State of California,
        *Defendant-Appellant,*

        and

CHARLENE ZETTEL, Director,
Department of Consumer Affairs,
        *Defendant.*

No. 07-15050

D.C. No.
CV-02-01464-LKK

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, District Judge, Presiding

Argued and Submitted
July 16, 2008—San Francisco, California

Filed May 28, 2009

Before: Before: Procter Hug, Jr., Richard A. Paez, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Hug

6313

## COUNSEL

Jennifer L. Weck, Deputy Attorney General, San Diego, California, for the appellant.

Lori A. Schechter, Morrison & Foerster, LLP, San Francisco, California, for the appellees.

## OPINION

HUG, Circuit Judge:

In this case we consider whether portions of certain California statutes and regulations violate the dormant Commerce Clause. The challenged laws prevent licensed opticians[1] from having specified business relationships with or offering ser-

---

[1]Optical companies, such as LensCrafters, that fill prescriptions and perform related services in selling eyewear, fit within the definition of "dispensing opticians" under California law. *See* Cal. Bus. & Prof. Code § 2550. We will refer to "dispensing opticians" simply as "opticians" in this opinion.

vices in the same locations as licensed optometrists and oph-thalmologists.

The National Association of Optometrists and Opticians, LensCrafters, Inc., and Eye Care Centers of America, Inc. challenged a portion of the California statutes and regulations as violating the dormant Commerce Clause and moved for summary judgment. California's Attorney General and Department of Consumer Affairs (collectively "the State") opposed the motion. The district court granted summary judgment for the plaintiffs and entered the following declaratory judgment and injunction:

> It is hereby DECLARED that California Business & Professions Code, §§ 655, 2556 and 3103, and two companion regulations, 16 Cal. Code of Regs., Title 16 §§ 1399.251 and 1514, are unconstitutional as they violate the dormant aspect of the Commerce Clause of the United States Constitution, to the extent that individually, or taken together, they prohibit optical companies from offering prescription eyewear at the same location in which eye examinations are provided, and from advertising that eyewear and eye examinations are available in the same location.

> Defendants are hereby permanently ENJOINED and PROHIBITED from enforcing California Business & Professions Code, §§ 655, 2556 and 3103, and two companion regulations, 16 Cal. Code of Regs., Title 16 §§ 1399.251 and 1514, either individually, or taken together, so as to prohibit optical companies from offering prescription eyewear at the same location in which eye examinations are provided, and from advertising that eyewear and eye examinations are available in the same location.

The defendants timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

## I.

## Standing

As a preliminary matter, the State challenges the standing of two of the appellees, Eye Care Centers of America and the National Association of Optometrists and Opticians. It does not, however, challenge LensCrafters' standing. As a general rule, in an injunctive case this court need not address standing of each plaintiff if it concludes that one plaintiff has standing. *See Preminger v. Peake*, 552 F.3d 757, 764 (9th Cir. 2008). Because LensCrafters unquestionably has standing, we must reach the question of whether the California laws violate the dormant Commerce Clause. Thus, we do not address the challenge to the other appellees' standing and refer to appellees collectively as LensCrafters.

## II.

## Dormant Commerce Clause

[1] The Commerce Clause as written is an affirmative grant of power to Congress to regulate interstate commerce, but from it courts have long inferred a prohibition on state actions limiting interstate commerce. *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984). This inference, commonly referred to as the dormant Commerce Clause, promotes a national market and the free flow of commerce between the states by preventing them from adopting economic protectionist policies. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299-300 (1997); *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994).

Under the dormant Commerce Clause, LensCrafters seeks declaratory and injunctive relief, arguing that portions of the

California statutes and regulations are protectionist measures because they favor in-state optometrists and ophthalmologists at the expense of opticians and optical companies headquartered out of state. The State responds that the California laws do not violate the dormant Commerce Clause because they are not impermissible economic protectionism; instead, these laws prevent optometrists and ophthalmologists, as health care providers, from being unduly influenced by commercial interests, like LensCrafters.

The relevant statutes provide that licensed optometrists and opticians cannot "have any membership, proprietary interest, coownership, landlord-tenant relationship, or any profit-sharing arrangement in any form, directly or indirectly" with each other. Cal. Bus. & Prof. Code § 655(a)-(b). They further provide that it is unlawful for an optician to advertise or furnish the services of an optometrist or ophthalmologist, employ an optometrist or ophthalmologist, maintain an optometrist or ophthalmologist on or near the optician's premises, or duplicate or change lenses without a prescription from an optometrist or an ophthalmologist. *Id.* § 2556. An optician cannot include in any advertisement relating to the sale of eyewear words that indicate the practice of optometry, *id.* § 3103, and it is unprofessional conduct for an optician to advertise the services of an optometrist or ophthalmologist. Cal. Admin. Code § 1399.251. If an optometrist rents space from a commercial concern, the rented space must be definite and apart from space occupied by other occupants of the premises, and the optometrist's name or practice cannot be linked in advertising or in any other manner with that of the commercial concern. *Id.* § 1514.

Although the language of the statutes and regulations forbids several types of conduct, the district court noted that LensCrafters only challenged the prohibition on co-location and advertising of optometric services:

> Plaintiffs challenge three sections of California's Business & Professions Code, §§ 655, 2556 and

[3103], and two companion regulations, 16 Cal. Code of Regs, Title 16 §§ 1399.251 and 1514, to the extent these provisions taken together prohibit out-of-state optical companies from offering prescription eyewear at the same location in which eye examinations are provided, and from advertising that eyewear and eye examinations are available in the same location.

*Nat'l Ass'n of Optometrists & Opticians v. Lockyer*, 463 F. Supp. 2d 1116, 1118 (E.D. Cal. 2008). LensCrafters challenges the California laws primarily because optometrists and ophthalmologists can set up a practice where patients can get an eye examination and also buy prescription eyewear. Opticians are unable to offer this convenience, which LensCrafters describes as "one-stop shopping."

LensCrafters contends one-stop shopping provides a significant business advantage in the sale of eyewear. It also asserts that opticians are largely out-of-state businesses, whereas optometrists and ophthalmologists are largely in-state individuals or firms. Thus, LensCrafters argues the California laws have a discriminatory effect on out-of-state businesses because they prevent out-of-state opticians from offering one-stop shopping while allowing in-state optometrists and ophthalmologists to do so.

**[2]** To address LensCrafters' claim, we must first determine whether the dormant Commerce Clause is applicable to this case. The dormant Commerce Clause is implicated if state laws regulate an activity that "has a substantial effect' on interstate commerce such that Congress could regulate the activity." *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 993 (9th Cir. 2002). We conclude that the dormant Commerce Clause is applicable to this case because the retail sale of eyewear involves and affects interstate commerce such that Congress could regulate in that area. *See generally Lens-*

*Crafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005). Neither party challenges this premise.

Once the dormant Commerce Clause applies, the next step is to determine whether the challenged California laws discriminate against out-of-state entities. *C & A Carbone*, 511 U.S. at 390; *Conservation Force, Inc.*, 301 F.3d at 995. Laws that discriminate against out-of-state entities are subject to strict scrutiny, while non-discriminatory laws only need to satisfy a less rigorous balancing test to survive constitutional scrutiny. *C & A Carbone, Inc.*, 511 U.S. at 390, 392; *Conservation Force, Inc.*, 301 F.3d at 995.

A statutory scheme "can discriminate against out-of-state interests in three different ways: (a) facially, (b) purposefully, or (c) in practical effect." *LensCrafters*, 403 F.3d at 802 (internal quotation omitted). In this case both parties agree that the California laws do not facially discriminate against out-of-state entities, so we are left to consider whether the portion of the challenged laws have a discriminatory purpose or effect.

The district court discussed evidence of discriminatory purpose in this case, but it did not rely on the laws' purpose in concluding that they are discriminatory. *See Nat'l Ass'n of Optometrists & Opticians*, 463 F. Supp. 2d at 1130. The district court stated:

> [T]he evidence shows that Section 655, arguably the key provision being challenged, was introduced in the California Legislature, as the Act's chief sponsor put it, "on behalf of the California Optometric Association in an effort to protect California from some of the problems . . . being experienced in eastern states, where large business interests have completely taken over the optometric profession."

*Id.* (omission in original). The court further stated, "While this evidence does not shed further light on how the challenged

restrictions operate in practice, it does buttress the conclusion that the regulatory scheme is in fact an instance of economic protectionism." *Id.*

**[3]** We disagree with the district court that the statement of the chief sponsor indicates that the regulatory scheme was intended as economic protectionism favoring California businesses. Rather the statement is clear that the sponsor's objective was to protect California's optometric profession from being taken over by large business interests, as had been experienced in eastern states. This is in line with the wording of the challenged statutes and regulations, which are directed at preventing any sort of relationship of optometrists and ophthalmologists, who are health care providers, with the commercial interests of opticians who do not have health care responsibilities. Nothing in the statement suggests that the purpose is to protect California optometrists and ophthalmologists from competition from out-of-state interests, as opposed to commercial interests generally.

We next look to whether the California laws have a discriminatory effect on interstate commerce and specifically on out-of-state businesses like LensCrafters. To determine whether the laws have a discriminatory effect it is necessary to compare LensCrafters with a similarly situated in-state entity. *See Tracy*, 519 U.S. at 299. The State contends there is no discrimination between similarly situated entities, and we agree. California treats out-of-state opticians, such as LensCrafters, the same as in-state opticians. The statutes and regulations apply to both. The challenged laws treat opticians differently from optometrists and ophthalmologists, but such distinctions are not prohibited, because opticians are not similarly situated to optometrists and ophthalmologists.

Our conclusion that opticians are not similarly situated to optometrists and ophthalmologists is guided by the Supreme Court's opinion in *Tracy*. In that case, the Supreme Court considered a dormant Commerce Clause challenge to general

sales and use taxes that Ohio imposed on natural gas purchases whether in-state or out-of-state, but from which Ohio exempted local public utility companies. The Court acknowledged that local utility companies and independent out-of-state natural gas marketers competed or wished to compete in one of the same markets, but still concluded that they were not similarly situated, and there was thus no discriminatory effect. *Id.* at 302-10. In reaching this conclusion, the Court paid attention to the local utility companies' special role in serving the residential market, remarking on "our traditional recognition of the need to accommodate state health and safety regulation in applying dormant Commerce Clause principles," and recognizing that Ohio was protecting the health of its citizens by requiring local utility companies to ensure a dependable supply of natural gas to residential consumers so they would not be "frozen out of their houses in the cold months." *Id.* at 306. The Court then stated the Commerce Clause was "never intended to cut the States off from legislating on all subjects relating to the health, life and safety of their citizens, though the legislation might indirectly affect the commerce of the country." *Id.* (internal quotations omitted). The Court reiterated that a bald assertion that laws are directed toward legitimate health and safety concerns is not enough to withstand a dormant Commerce Clause challenge, but it made clear that we must give some deference to states' decisions regarding health and safety. *Id.* at 307.

**[4]** Here through the challenged laws, California has sought to protect optometrists and ophthalmologists as health care professionals from being affected by subtle pressures from commercial interests. The pressures of co-ownership and profit sharing prohibited by the statutes are more obvious, but potentially even a landlord-tenant relationship could undermine health care quality if the landlord required a certain level of performance to maintain the lease. It is true that an optometrist or ophthalmologist would still be bound by professional and ethical standards. However, it is the subtle pressure to conform to commercial desires that the statutes seek to avoid.

These subtle pressures would be difficult to regulate as violations of professional or ethical standards. Thus, the California laws in this case are health regulations designed to prevent health care providers from being unduly affected by commercial interests. We must give deference to the State's choice to protect its citizens in this way.

The State offered evidence regarding the several ways in which it distinguishes between opticians, optometrists, and ophthalmologists.[2] These distinctions demonstrate in what respects optometrists and ophthalmologists are health care providers and opticians are commercial interests. Ophthalmologists require a medical degree. *See* Cal. Bus. & Prof. Code § 2089. Optometrists also have significant educational requirements. They must complete certain undergraduate requirements and graduate from a four-year, approved, optometry school. *See id.* §§ 3041.3, 3046. They must pass national and California exams and maintain continuing education requirements. *Id.* §§ 3041.3, 3059; *see also* Cal. Admin. Code §§ 1531, 1536. Both ophthalmologists and optometrists have special ethical and professional responsibilities regulated by the state and their respective professions, as the State's experts testified. The responsibilities carry over to all services provided including the sale of eyewear.[3]

In contrast, although opticians also sell eyewear, they are not bound by the same ethical and professional responsibili-

---

[2]The Court has long upheld these distinctions, and corresponding limitations on opticians' abilities to compete with optometrists and ophthalmologists. *See Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 486-87 (1955); *Roschen v. Ward*, 279 U.S. 337, 339 (1929) (rejecting a challenge to a state's legislation that required an optometrist or ophthalmologist to be personally in charge of businesses that sold eyewear, concluding that "there can be no doubt that the presence and superintendence of the specialist tend to diminish an evil").

[3]The State's experts, doctors Gailmard and Thal, testified that sales of optical goods are all part of providing patient medical care and such sales are incidental to providing quality health care.

ties. Unlike optometrists and ophthalmologists, opticians are not health care providers, do not diagnose or treat diseases of the eye, and may be owned and operated as commercial concerns. *Compare* Cal. Bus. & Prof. Code §§ 3041-42 *with* §§ 2550, 2556. As health care providers, optometrists and ophthalmologists clearly have special responsibilities that opticians do not, and as commercial concerns, opticians have business structures available to them that optometrists and ophthalmologists do not.

LensCrafters contends that these differences are irrelevant because it competes in the same market for the sale of eyewear as optometrists and ophthalmologists. We disagree. Although competing in different markets or offering different products generally means that entities are not similarly situated, *see Tracy*, 519 U.S. at 299, competing in the same market is not sufficient to conclude that entities are similarly situated, as *Tracy* made clear.

Likewise in *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 125-26 (1978), the Court chose not to treat out-of-state gasoline refiners who also operated retail stations as similarly situated to in-state gasoline retailers. Although the *Exxon* Court did not articulate how it decided whether the entities were similarly situated, the facts of that case make clear that the out-of-state gasoline refiners wished to continue offering the same products and competing in the same market as the in-state retailers. 437 U.S. at 121-23. Nevertheless, in *Exxon*, the Court distinguished between the entities based on their business structures, holding that a state may prevent businesses with certain structures or methods of operation from participating in a retail market without violating the dormant Commerce Clause. 437 U.S. at 127. Other courts have applied the rule from *Exxon* to conclude that entities are not similarly situated and so state laws are not discriminatory. *See Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 163-64 (5th Cir. 2007); *LensCrafters, Inc.*, 403 F.3d at 804-05; *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 501-02 (5th Cir.

2001). Because states may legitimately distinguish between business structures in a retail market, a business entity's structure is a material characteristic for determining if entities are similarly situated.

Therefore, we reject LensCrafters' argument that competition in the same market renders it similarly situated to optometrists and ophthalmologists. Through the challenged laws, California has permissibly distinguished between types of entities and services they may provide.

**[5]** Because they have different responsibilities, different purposes, and different business structures, opticians are not the same as optometrists or ophthalmologists. Although Lens-Crafters competes in the same market as in-state optometrists and ophthalmologists, LensCrafters is an optician. As such, it is similarly situated to in-state opticians, not in-state optometrists or ophthalmologists. Because the California laws make no geographical distinctions between similarly situated entities, they are not invalidated by the dormant Commerce Clause.

**[6]** We note that despite LensCrafters' claims that the ability to offer one-stop shopping affords a sales advantage to optometrists and ophthalmologists, there are other sales advantages enjoyed by LensCrafters by virtue of their size, such as lower cost purchasing and the ability to offer a wider selection of eyewear. It is important that LensCrafters is not precluded from operating in California, which is the situation for out-of-state entities in some dormant Commerce Clause cases. LensCrafters is only deprived of one eyewear sales method.

Our conclusion that the California laws are not discriminatory is in accord with the decision of the Sixth Circuit in a virtually identical situation involving LensCrafters' dormant Commerce Clause challenge to Tennessee statutes. *Lens-Crafters v. Robinson*, 403 F.3d 798 (6th Cir. 2005). The court

held that the challenged Tennessee statutes, similar to the contested California laws, did not violate the dormant Commerce Clause. It concluded that dispensing optometrists and optical stores are not similarly situated. The court stated, "Unlike retail optical stores, licensed optometrists are healthcare providers and, as such, have unique responsibilities and obligations to their patients that are not shared by optometric stores." *Id.* at 804. The court also pointed out that the challenged statutes did not discriminate between in-state and out-of-state optical companies wishing to sell eyewear or between in-state and out-of-state optometrists as both in-state and out-of-state entities were bound by the same statutes. *Id.* at 805.[4]

[7] Our determination that the challenged laws are not discriminatory does not end our analysis. Even though not discriminatory, the laws may still be invalidated if the burden they place on interstate commerce outweighs their benefits. This balancing test was set forth in *Pike v. Bruce Church, Inc.*, in which the Supreme Court stated, "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local

---

[4]The parties disagree about the implications of the California Supreme Court's decision in *People v. Cole*, 135 P.3d 669 (Cal. 2006), specifically with regard to whether it is possible for an interstate optical chain like LensCrafters to provide "one-stop shopping" in California by forming a relationship with a health care service plan ("HMO") licensed under the Knox-Keene Act of 1975, Cal. Health and Safety Code §§ 1340, et seq. The California Supreme Court in *Cole* held that the Knox-Keene Act does not exempt eyewear stores from complying with Cal. Bus. & Prof. Code §§ 655 and 2556, *Cole*, 135 P.3d at 671, but it remains unclear whether the California statutes allow for *some* sort of business relationship between a company like LensCrafters and a Knox-Keene HMO. The district court assumed that, after *Cole*, the statutes did not allow for any such arrangements. *See Nat'l Ass'n of Optometrists & Opticians*, 463 F. Supp. 2d at 1120. It is not clear to us that this is so, but even assuming it is, that fact would not change our conclusion that the California statutes have no discriminatory effect.

benefits." 397 U.S. 137, 142 (1970). LensCrafters bears the burden of proof in establishing the excessive burden in relation to the local benefits. In this case, the district court did not apply the *Pike* balancing test because it concluded the laws had a discriminatory effect on LensCrafters. Accordingly, we remand to the district court to apply the *Pike* balancing test in the first instance.

## CONCLUSION

[8] The district court erred in concluding that the California statutes discriminate against out-of-state entities in violation of the dormant Commerce Clause. We reverse and remand to the district court to apply the *Pike* balancing test.

REVERSED AND REMANDED.